CASE 50.—PROSECUTION AGAINST THE GIBSON COMPANY
FOR CARRYING ON BUSINESS OF A TRADING
STAMP COMPANY WITHOUT A LICENSE—April 24.

# Commonwealth v. Gibson Co.

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Affirmed.

Licenses—Statutory Provisions—Mercantile Business—Ky. Stats.,
1903, section 4224, defines a trading stamp company to be one
that gives premiums or valuable personal property in
exchange for stamps or checks furnished to purchasers of
merchandise, and provides that they shall pay a license tax.
Held, that a company conducting a general retail mercantile
business, that gave to the purchaser of its goods who paid
cash a check representing 4 per cent. of his purchase, which
could be exchanged for articles in the store or for cash,
was not a trading stamp company.

WILLIAM LEWIS and W. R. RAY, for appellant.

N. B. HAYS, Attorney General, and C. H. MORRIS of counsel.

J. D. BLACK and P. D. BLACK, for appellee.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

The grand jury of Knox county returned an indictment against appellee, accusing "the Gibson Company, a partnership, of the offense of unlawfully

carrying on the business and occupation of a trading stamp company, without having paid a license therefor, committed in manner and form as follows, viz.: The said Gibson Company, a partnership, did on the 1st day of May, 1906, in the county, circuit and State aforesaid, and before the finding of the indictment, unlawfully carry on the business or occupation of a trading stamp company by selling goods, wares and merchandise to George Goodin and divers other persons whose names are to the grand jury unknown, during the year last passed, and issuing stamps and checks to the said Goodin and others as purchasers, which stamps or checks under an agreement and understanding with the said Gibson Company were to be returned to the said company in exchange for premiums and valuable personal property, and which stamps and checks were issued by the said Gibson Company to the said Goodin and other purchasers to be returned by them for which they were to receive and did receive premiums and valuable personal property, without having paid a license therefor." This indictment was found under section 4224 of the Kentucky Statutes of 1903, providing that: "All resident or foreign trading stamp companies or corporations doing business in this State shall annually pay a license tax to the county court clerk of each county wherein such business is conducted, ten dollars. A trading stamp company is defined to be a company that gives premiums or valuable personal property in exchange for stamps or checks furnished to purchasers of merchandise." The law and facts were submitted to the court, and a judgment finding the defendant not guilty was entered.

The evidence establishes the following facts: The Gibson Company conducted a general retail mercan-

tile business in the town of Barbourville, Ky. When a customer purchased goods on sale in the store, paying cash therefor, he was given a ticket or check that represented 4 per cent. of his purchase, and containing the following indorsement: ''Return these checks in amounts of one dollar or more and receive handsome present free, or in twenty-five dollars and receive one dollar in cash.'' The checks were issued directly by the Gibson Company to the purchaser, and the articles given in payment or discharge of the ticket were kept in the store of the company and delivered to the person for the checks, and, when the checks were presented, an article costing the amount of the check was delivered in redemption of it. In other words, a purchaser who bought in the store $5 worth of goods would receive at the time a check worth 20 cents. With this check, he might at once purchase some article the cost price of which was 20 cents, or he might retain the check and present it at a future time and receive an article costing 20 cents. No other person or concern, excepting the Gibson Company, and the purchaser of its goods, wares, and merchandise, was in any way interested or connected with the transaction. Checks issued were redeemable only at the company's store, and only in merchandise sold by it or in money furnished by it when checks amounting to $25 were offered for redemption. The scheme was intended to benefit the company by inducing persons to pay cash for merchandise purchased, thereby obtaining what might be termed a discount of 4 per cent.

The statute was not designed to prohibit bona fide merchants from offering discounts or rebates to cash purchasers of their goods. A merchant, as a business proposition, might find it profitable to give a discount or rebate to persons who paid cash, withholding this

advantage from those who purchased on credit. If a merchant advertised that he would sell for cash any article in his store at 4 per cent. less than the marked price, we cannot perceive any valid objection that could be urged to it, and it is plain that this practice would not violate either the letter or the spirit of the statute. Nor is there any substantial difference in the principle involved between selling an article at 4 per cent. under its marked price, and selling it at the marked price and giving to the purchaser a ticket or check representing the discount, with which ticket or check he can purchase an article in the store, the cost price of which is the same as the value of his ticket or check. The statute must be read and construed as a whole, and contemplates a company or corporation engaged in the distinct business of furnishing trading stamps, the language being that "all resident or foreign trading stamp companies or corporations doing business in this State," and cannot fairly be construed to extend to or embrace regular merchants who conduct their business in the manner of the Gibson Company. This section first appeared in the statutes in 1902. Previous to that time there was no law in this State regulating or defining trading stamp companies, although it is a matter of common knowledge that it had been for many years a custom among merchants to offer premiums, rebates, and discounts to cash customers. Doubtless, getting from this custom the suggestion, enterprising companies conceived the plan that independent trading stamp companies might probably be established that would furnish to merchants for compensation stamps to deliver to purchasers; the stamps being redeemable at the trading company's establishment in articles kept by it. In this way, the merchant would be enabled to advertise

his business by offering free of cost trading stamps which purchasers could take to the establishment of the trading stamp company and receive without charge some article equal in value to the amount represented by the trading stamps they had. To require this class of traders to pay a license on their business, the statute was enacted. An apt definition of a trading stamp company is furnished by a witness in this case, who said: "The trading stamp companies and their manner of doing business is something like this, as I have had it presented to me in a business way: They make their living out of the sale of stamps. They come to me as a dry goods man and place their stamps with me, and I obligate myself in a contract to give every customer at my store a stamp. Then they go to the hardware man, and place the same stamps with him under a similar contract; and so on to the druggist, and other different lines. The customer comes into my store and makes a purchase of, say $2, and I give him a stamp and a little book in which to place the stamp. Then he goes to the hardware man and makes a purchase, and he gets the same character of stamp to be pasted in the same book. Then if he goes to the druggist, or other business man with whom the trading stamp company has an arrangement, and makes a purchase, a stamp is given him and placed in the book. The trading stamp company has placed with some merchant their line of premium goods, and when the customer has purchased. say, $10 worth, that entitled him to a piece of their goods. It makes no difference from whom he gets the stamps, whether the grocer, the druggist, or the dry goods man. The merchant buys from the trading stamp company the stamps, and the goods offered as premiums belong to the trading stamp company; the mer-

chant paying for the stamps 2 per cent. on all the goods that he sells."

The difference between a trading stamp company conducting its business in the manner described, and that of a merchant, who, like the Gibson Company, gives a discount to purchasers, is well defined.

The judgment of the lower court, holding that the statute, did not apply to the business conducted by the Gibson Company, is affirmed.